**MALEK MOSS PLLC**
Kevin N. Malek (*pro hac vice*)
340 Madison Avenue, FL 19
New York, New York 10173
(212) 812-1491
kevin.malek@malekmoss.com

**CARLSON & MESSER LLP**
David Kaminski
  kaminskid@cmtlaw.com
J. Grace Felipe
  felipeg@cmtlaw.com
5901 W. Century Boulevard
Suite 1200
Los Angeles, California 90045
Tel: (310) 242-2200
Fax: (310) 242-2222

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (SAN JOSE DIVISION)

| | |
|---|---|
| VOIP-PAL.COM, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>APPLE, INC.,<br><br>*Defendant*. | Case No. 5:18-cv-06216-LHK<br><br>**VOIP-PAL'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Date: September 19, 2019<br>Time: 1:30pm PST<br>Courtroom: Courtroom 8 – 4th Floor<br>Hon. Judge Lucy H. Koh |
| VOIP-PAL.COM, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON TECHNOLOGIES, INC.,<br><br>*Defendant*. | Case No. 5:18-cv-07020-LHK |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

I. .......... INTRODUCTION ........................................................................................................ 1

II. ........ BACKGROUND OF THE TECHNOLOGY ............................................................. 1

III. ...... LEGAL STANDARDS ............................................................................................... 2

IV. ...... TERMS WITH AGREED CONSTRUCTION ......................................................... 3

V. ........ TERMS REQUIRING CONSTRUCTION .............................................................. 5

    A. ......... "routing message" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 12, 17, 18) ................................................ 5

    B. ......... "internet address" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 12, 17, 18) .................................................. 7

    C. ......... "call controller" ('762 patent claim 6) ........................................................................... 9

    D. ......... "network external to the system"/ "external network" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12, 13; '002 patent claims 1, 12, 29; '549 patent claims 1, 6, 8, 17, 24) ......................................................................................................................... 10

VI. ...... TERMS THAT SHOULD BE GIVEN THEIR PLAIN AND ORDINARY MEANINGS ................................................................................................................ 11

    A. ......... "participant profile" / "user profile" ('762 patent claims 1, 21, 25; '330 patent claims 1, 4, 12; '549 patent claims 1, 17; '002 patent claims 1, 12, 22) ............................... 11

    B. ......... "attribute" ('762 patent claims 1, 2, 21, 25, 26, 30; '330 patent claims 1, 4, 12; '002 patent claims 1, 12; '549 patent claims 1, 11, 12, 17) ................................................. 13

    C. ......... "processing the second participant identifier" ('762 patent claim 1; '002 patent claim 1; '549 patent claim 1) ............................................................................................... 14

    D. ......... "system" ('762 patent claims 1, 14, 21, 25, 26, 30; '330 patent claims 1, 3, 12, 13; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 6, 9, 17, 18) .......................... 16

    E. ......... "the classifying the communication is based on the causing the at least one processor to access the at least one database to search for the user profile for the second participant" ('330 patent claim 4) ........................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VII..... CONCLUSION**................................................................................................**19**

# TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009) .......................................................... 8

*Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343 (Fed. Cir. 2003) ................................... 8

*Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366 (Fed. Cir. 2009) ...................................... 13

*Astrazeneca AB v. Mut. Pharm., Inc.*, 384 F.3d 1333 (Fed. Cir. 2004) ........................................... 2

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341 (Fed. Cir. 2001) .............................................................................................................................................. 2

*Central Admixture Pharm. Services, Inc. v. Advanced Cardiac Sol'ns, P.C.*, 482 F.3d 1347 (Fed. Cir. 2007) ............................................................................................................................................ 14

*ContentGuard Holdings, Inc. v. Apple, Inc.*, No. 2016-1916, 2017 WL 2963555 (Fed. Cir. July 12, 2017) .............................................................................................................................................. 5

*Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321 (Fed. Cir. 2009) ............................................ 8

*GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed. Cir. 2014) ..................... 12, 14

*Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362 (Fed. Cir. 2014) .............................. 12, 14

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379 (Fed. Cir. 2008) ........................ 17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351 (Fed. Cir. 2008) ..... 2, 15

*Pfizer v. Teva Pharm.*, 429 F.3d 1364 (Fed. Cir. 2005) .................................................................... 8

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) .................................................... 2, 3, 9, 15

*Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012) ................. 12, 14, 18

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997) ...................................... 2, 18

*Voda v. Cordis Corp.*, 536 F.3d 1311 (Fed. Cir. 2008) .................................................................... 8

1
2

## I.    INTRODUCTION

3
4

VoIP-Pal's proposed constructions track the disclosures in the patents-in-suit and accurately

5

frame the relevant aspects of the claims. Defendants' proposals avoid addressing key claim

6

construction issues and introduce redundant, superfluous and ambiguous words for claim elements

7

that are facially clear and simple. For instance, for common English words and phrases such as

8

"classify" "controller" "cause" and "access" that should require no construction, Defendants

9

suggest that such terms are not capable of understanding and require construction by the Court.

10

And for technical terms such as "routing message" that would not be generally understood by a

11

jury, Defendants propose a plain and ordinary meaning, suggesting that construction is

12

unnecessary. Further, Defendants propose some constructions as indefinite without any evidence

13

as to what one of skill in the art would understand with respect to the respective claim terms. As

14

discussed below, for each proposed term in dispute, governing case law along with the intrinsic

15

record, extrinsic record and mere common understanding and meaning support VoIP-Pal's

16

proposed constructions, and refute that of Defendants.

17

## II.    BACKGROUND OF THE TECHNOLOGY

18
19

The Patents-in-Suit are directed to the field of voice over internet telephone calls, messages

20

and other communications and more specifically to communication routing technology used to

21

facilitate such communications. They teach methods and systems, embodied in computer and

22

network technology, allowing for a telephone call, message or other communication to be routed

23

between physical gateways of multiple but disparate networks. ECF No. 81 (Case No. -06216, First

24

Amended Complaint) ¶¶ 8 – 40; ECF No. 61 (Case No. -07020, First Amended Complaint) ¶¶ 10

25

– 40. As is evident by Figure 1 of the Patents-in-Suit, which illustrates the environment of the

26

invention required to make a phone call between London and Vancouver, the claimed inventions

27
28

facilitate a phone call or other means of communication (12 and 15) within a multi-layered network whereby calls are routed by a physical controller (16) to physical gateways (20) and destination internet protocol addresses (12). ECF No. 81 ('762 Patent[1]) at p. 56 of 324 (showing Figure 1); ECF No. 61 ('762 Patent) at p. 55 of 332 (showing Figure 1).

## III.   LEGAL STANDARDS

VoIP-Pal recognizes that this Court is well-versed in claim construction law and thus highlights only a few key principles. "The goal of claim construction is to determine what an ordinary artisan would deem the invention claimed by the patent." *Astrazeneca AB v. Mut. Pharm., Inc.*, 384 F.3d 1333, 1337 (Fed. Cir. 2004). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc). Indeed, not every word in a claim must be construed, because some words in a claim simply have their ordinary, lay meaning. *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (finding district court properly refused to construe the term "melting" because the meaning of the term did not depart from its ordinary meaning). "Claim construction . . . is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). "District courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). The Federal Circuit "has repeatedly held that a district court is not obligated to construe terms with ordinary meaning, lest

---

[1] The Patents-in-Suit are all continuations from the same application. Therefore, the Patents-in-Suit contain nearly identical written descriptions and figures. Accordingly, reference to figures or disclosure, other than claims, in one of the Patents-in-Suit applies to all of the Patents-in-Suit.

- 2 -

trial courts be inundated with requests to parse the meaning of every word in the asserted claims." *Id*. at 1360.

For terms that do need to be construed, courts look first to the intrinsic evidence, made up of the patent claims themselves, the patent specification (including the written description and figures), and the record of the prosecution proceedings at the Patent Office. *Phillips*, 415 F.3d at 1314-17. When relying on the specification, "it is important to keep in mind that the purpose[] of the specification [is] to teach and enable those of skill in the art to make and use the invention." *Id*. at 1323. Thus, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Id*.

While courts may also, in some circumstances, consider extrinsic evidence (i.e., evidence outside of the intrinsic record), Federal Circuit law prohibits using extrinsic evidence to reach a construction that is contrary to the intrinsic evidence. *Phillips*, 415 F.3d at 1317-1318.

## IV.   TERMS WITH AGREED CONSTRUCTION

The parties have agreed on the following constructions:

| | Term | Agreed Construction |
|---|---|---|
| 1 | "A method of routing communications in a system in which a first participant identifier is associated with a first participant registered with the system and wherein a second participant identifier is associated with a second participant, the first participant being associated with a first participant device operable to establish a communication using the system to a second participant device associated with the second participant, the system comprising at least one processor operably configured to execute program code stored in at least one memory, the method comprising" | The preamble is limiting. |

| | | Term | Agreed Construction |
|---|---|---|---|
| | | ('762 patent[2] claim 1) | |
| | 2 | "A non-transitory computer readable medium encoded with program code for directing the at least one processor to execute the method of claim 14." ('762 patent claim 16) | The preamble is limiting. |
| | 3 | "A method of routing communications in a system in which a first participant identifier is associated with a first participant registered with the system and wherein a second participant identifier is associated with a second participant, the first participant being associated with a first participant device operable to establish a communication using the system to a second participant device associated with the second participant, the system comprising at least one processor operably configured to execute program code stored in at least one memory, the method comprising" ('762 patent claim 21) | The preamble is limiting. |
| | 4 | "A system for routing communications in which a first participant is registered with the system and has an associated first participant identifier and wherein a second participant has an associated second participant identifier, the first participant being associated with a first participant device operable to establish a communication using the system to a second participant device associated with the second participant, the system comprising" ('762 patent claim 25) | The preamble is limiting. |
| | 5 | "A method for routing a communication in a communication system between an Internet-connected first participant device associated with a first participant and a second participant device associated with a second participant, the method comprising" ('330 patent claim 1) | The preamble is limiting. |
| | 6 | "An apparatus for routing communications in a communication system that includes an Internet-connected first participant device associated with a first participant, the first participant device operable to initiate a communication to a second participant device associated with a second participant, the apparatus comprising" | The preamble is limiting. |

---

[2] References to the '762 Patent are made to the '762 Patent in Case No. -07020 at ECF No. 61 pages 55 - 119.

- 4 -

| | | Term | Agreed Construction |
|---|---|---|---|
| | | ('330 patent[3] claim 12) | |
| | 7 | "A method of routing a communication in a communication system between an Internet-connected first participant device associated with a first participant and a second participant device associated with a second participant, the method comprising" ('002 patent[4] claim 1) | The preamble is limiting. |
| | 8 | "An apparatus for routing communications in a communication system that includes an Internet-connected first participant device associated with a first participant, the first participant device operable to initiate a communication to a second participant device associated with a second participant, the apparatus comprising" ('002 patent claim 12) | The preamble is limiting. |
| | 9 | "A method of routing a communication in a communication system between an Internet-connected first participant device associated with a first participant and a second participant device associated with a second participant, the method comprising" ('549 patent[5] claim 1) | The preamble is limiting. |
| | 10 | "An apparatus for routing a communication in a communication system between an Internet-connected first participant device and a second participant device, the apparatus comprising" ('549 patent claim 17) | The preamble is limiting. |

VoIP-Pal respectfully requests that the Court adopt the foregoing as proposed constructions accordingly.

## V.   TERMS REQUIRING CONSTRUCTION

### A.   "routing message" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 12, 17, 18)

---

[3] References to the '330 Patent are made to the '330 Patent in Case No. -07020 at ECF No. 61 pages 121 - 190.

[4] References to the '002 Patent are made to the '002 Patent in Case No. -07020 at ECF No. 61 pages 191 - 259.

[5] References to the '549 Patent are made to the '549 Patent in Case No. -07020 at ECF No. 61 pages 260 - 332.

- 5 -

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| message to a call controller containing information related to the path of a communication within a network or between networks | plain and ordinary meaning |

The jury would benefit from a construction of "routing message." A "routing message" is not a common term that will be familiar to must jurors. *See ContentGuard Holdings, Inc. v. Apple, Inc.*, No. 2016-1916, 2017 WL 2963555, at *4 (Fed. Cir. July 12, 2017) (district court has broad discretion in making decisions to avoid juror confusion). Here, the routing message determines the path of the communication within a network or between networks.

The intrinsic record is consistent with VoIP-Pal's construction. For example, the specification identifies several examples of routing messages, which are each a message containing information for a call controller regarding the path for a communication to take over networks. *See*, *e.g.*, '762 Patent at col. 1 l. 57 – col. 2 l. 5, col. 3, ll. 1-7, 14-25, 31-38, 45-53, col. 3 l. 61 – col. 4 l. 10, col. 5 ll. 18-25, 30-35, 42-49, 50-56, col. 6 ll. 15-46, col. 11 ll. 45-50, col. 12 ll. 1-4, 19-21, col. 14 l. 65 – col. 15 l. 9, col. 18 ll. 19-25, col. 21 ll. 13-36, 49-67, col. 22 ll. 1-4, col. 25 ll. 20-24. For example, the specification identifies that the routing message is communicated or transmitted "to a call controller." *See*, *e.g.*, '762 Patent at col. 3 ll. 5-7, 31-32, 51-53, col. 5 ll. 48-49, col. 1 ll. 45-47, col. 22 ll. 1-4. The specification also describes that the routing message contains information related to the path of a communication. *See*, *e.g.*, '762 Patent at col. 3 ll. 20-25, 33-38, col. 5 ll. 30-35. And the specification teaches the routing of the communication within or between networks via the routing message. *See*, *e.g.*, '762 Patent at col. 1 l. 57 – col. 2 l. 5, col. 3 l. 61 – col. 4 l. 10, col. 14 l. 65 – col. 15 l. 9.

Defendants' proposal provides no guidance to the jury regarding how one of ordinary skill in the art would understand the term at the time of the invention. Simply stating that a "routing

- 6 -

message" means routing message or does not need construction in accordance with its common ordinary meaning, as Defendants propose, does not convey any context for the jury to understand the scope or meaning of this term and only invites juror confusion. *O2 Micro Int'l Ltd.*, 521 F.3d at 1362. Defendants' proposal also risks that Defendants will try to expand the scope of the term "routing message" beyond its purported commonly-understood meaning, to the extent that is even discernable, and cause the parties to raise the construction issue again just before trial. *See O2 Micro Int'l Ltd.*, 521 F.3d at 1362 ("A determination that a claim term "needs no construction" or has the "plain and ordinary meaning" may be inadequate when . . . reliance on a term's "ordinary" meaning does not resolve the parties' dispute."). Thus, VoIP-Pal's construction should be adopted.

**B. "internet address" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 12, 17, 18)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| an address of a network element used in Internet Protocol (IP) communications | Public IP Address |

The parties agree that "internet address" is an address that is "Internet Protocol ("IP")" based. The dispute is apparently regarding whether that term excludes everything that is not a "public" IP address. As an initial matter, Defendants' proposed construction improperly limits the claims. Nothing in the claim language or the specification limits "internet address" to public IP addresses. Rather, the claim language and specification indicate that "internet address" should not be so limited. For example, as used in the specification, there is no limitation to or disclaimer of non-public IP addresses. Indeed, the specification uses the term internet address in the following context:

- the production of a "system routing message identifying an Internet address associated with the second participant device" (e.g., '002 Patent at col. 37 l. 51 – col. 38 l. 2, col. 39, ll. 51-63);

- 7 -

- the production of a "network routing message identifying an Internet address associated with a gateway to an external network" (e.g., '002 Patent at col. 37 l. 51 – col. 38 l. 2);

- describing that "each respective routing message identifying an Internet address associated with a recipient device or identifying an Internet address associated with a gateway to an external network" (e.g., 002 Patent, col. 38, ll. 53-65); and

- determining the "Internet address associated with the second participant device based on a user profile for the second participant" (e.g., '002 Patent, col. 39, l. 64 – col. 40, l. 16).

Defendants' have not cited any evidence that supports limitation of the term internet address to that of "Public IP address". Defendants apparently contend that the Patents-in-Suit include a disclaimer of the full and ordinary scope of the claim term "internet address." Defendants rely on a statement in the specification that "the IP/UDP addresses of all elements such as the caller and callee telephones, call controller, media relay, and any others, will be assumed to be valid IP/UDP addresses directly accessible via the Internet or a private IP network . . .". Neither that statement, nor any other evidence relied upon by Defendants, contains the type of explicit definitional language that would justify such a restrictive construction. *See Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1354-55 (Fed. Cir. 2003) (rejecting construction that adopted one possible definition in a patent's specification over an alternative definition in the specification). Under Federal Circuit law, in order to constitute a disclaimer, there must be "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Epistar Corp. v. Int'l Trade Comm'n,* 566 F.3d 1321, 1335 (Fed. Cir. 2009). "Indeed, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. However, any such disclaimer must be clear." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1320 (Fed. Cir. 2008) (citations omitted).

Even if a patent specification describes only a single embodiment, claim language should not be limited to that embodiment "unless the patentee has demonstrated a clear intention to limit

- 8 -

the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009) (citation omitted). In this case, the language from the Patents-in-Suit upon which Defendants rely do not constitute a clear disavowal of the ordinary claim scope. Defendants cannot show disclaimer under Federal Circuit law. In *Pfizer v. Teva Pharm.*, 429 F.3d 1364, 1374 (Fed. Cir. 2005), for example, the Federal Circuit rejected the assertion that the claim term "saccharides" must mean "sugars" even though the phrase "saccharides (i.e. sugars)" appeared in the specification. The court reasoned that, "when read in the context of the entire [] patent, the reference to 'saccharides (i.e., sugars)' does not constitute a definition of 'saccharides.'" *Id.* at 1375. The "internet address" language in the Patents-in-Suit is similar to the "i.e." in *Pfizer*, because the Patents-in-Suit also describes other IP based addresses and not just public ones. *See*, *e.g.*, '002 Patent at col. 37 l. 51 – col. 38 l. 2, col. 38 l. 33 – col. 39 l. 6, col. 38 ll. 37 – 65, col. 39 ll. 51-63, col. 39 l. 64 – col. 40 l. 16, col. 41 ll. 16 - 23, col. 42 ll. 13-31; *see also* '330 Patent at col. 13 l. 55 – col. 14 l. 50, col. 21 ll. 24-60, col. 27 ll. 33-41, col. 27 l. 62 – col. 28 l. 46. Accordingly, "internet address" encompasses more than just Public IP addresses and VoIP-Pal's proposed constructions should be adopted.

### C. "call controller" ('762 patent claim 6)

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| apparatus that establishes a communication within a network or between networks | an entity separate from the participant devices |

The strongest evidence for a proper construction is the claim language itself. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Here, the claim language supports VoIP-Pal's construction that a "call controller" is an apparatus that establishes a communication within a network or between networks. Defendants' proposed construction is fatally flawed as it equates the term "call controller" as meaning any other "entity" no matter what that entity is or does. That

- 9 -

would not be helpful to a jury? What entity? Any entity? What does that entity do? Does that entity have any calling or communication capability as required by the claim term? Defendants' proposed construction is silent as to all of those questions. Indeed, Defendants' proposed construction would eliminate entirely the call or communication aspect as well as the control feature of the "call controller." There is absolutely no justification for a claim construction that does not have any nexus to the actual term in the claim as is the case with Defendants' proposed construction. Defendants' proposal should be rejected.

**D. "network external to the system"/ "external network" ('762 patent claims 1, 21, 25; '330 patent claims 1, 12, 13; '002 patent claims 1, 12, 29; '549 patent claims 1, 6, 8, 17, 24)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| a network that is distinct from and not controlled by the entity that controls the communication system | Indefinite |

The common ordinary meaning of this claim term dictates a construction that is entirely definite here. Indeed, the term uses common words in order to specify a particular network's relationship to the claimed system. *See*, *e.g.*, '762 Patent col. 38 ll. 3-10; *see also, e.g.,* '002 Patent col. 37 ll. 50-54. Indeed, claim 1 of the '762 Patent provides:

> A method of routing communications in a system in which a first participant identifier is associated with a first participant registered with the system and wherein a second participant identifier is associated with a second participant, the first participant being associated with a first participant device operable to establish a communication using the system to a second participant device associated with the second participant, the system comprising at least one processor operably configured to execute program code stored in at least one memory, the method comprising: in response to the first participant device initiating the communication to the second participant device, receiving the first participant identifier and the second participant identifier from the first participant device;
>
> using the first participant identifier to locate, via the at least one processor, a first participant profile from among a plurality of participant profiles that are stored in a database, the first participant profile comprising one or more attributes associated

- 10 -

with the first participant; processing the second participant identifier, via the at least one processor, based on at least one of the one or more attributes from the first participant profile, to produce a new second participant identifier;

classifying the communication, via the at least one processor, using the new second participant identifier, as a first network communication if a first network classification criterion is met and as a second network communication if a second network classification criterion is met;

when the first network classification criterion is met, producing, via the at least one processor, a first network routing message, the first network routing message identifying an address in the system, the address being associated with the second participant device;
and when the second network classification criterion is met, producing, via the at least one processor, a second network routing message, the second network routing message **identifying an address associated with a gateway to a network external to the system**, wherein the second network classification criterion is met if the second participant is not registered with the system.

The "external network" is external to the system, i.e., not part of the elements that form the system or the set of components or elements that are working together. There is nothing mysterious or highly technical about that. Those are common words used in their ordinary context. While patents are written for persons of skill in the art, in many cases the ordinary meaning of claim language as understood by such a person may be readily apparent even to lay judges, "and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. The claim term uses easily understood non-technical words such as "external" and "network".

Accordingly, the claim term should be construed according to its common and ordinary meaning.

## VI.   TERMS THAT SHOULD BE GIVEN THEIR PLAIN AND ORDINARY MEANINGS

### A.   "participant profile" / "user profile" ('762 patent claims 1, 21, 25; '330 patent claims 1, 4, 12; '549 patent claims 1, 17; '002 patent claims 1, 12, 22)

- 11 -

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| plain and ordinary meaning, i.e., information or data specific to the respective user/participant | plain and ordinary meaning, i.e., a record specific to the respective [user/participant] |

While the parties agree that the terms "participant profile / user profile" should be construed according to their common ordinary plain meaning, the parties differ as to what that meaning is. Defendants seek to limit the term profile to "record". But there has been no such limitation or disavowal of claim scope in the Patents-in-Suit or the associated file histories. "Participant profile / User Profile" should also be given its plain and ordinary meaning. There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). No such disavowal or lexicography is present with respect to the term "participant profile / user profile." Indeed, the evidence relied upon by Defendants is the opposite of an unequivocal disavowal. For example, Defendants cite the following passage from the specifications of the Patents-in-Suit:

> Locating a record may involve locating a caller dialing profile comprising a user name associated with the caller, a domain associated with the caller, and at least one calling attribute.

The fact that a record may involve locating a caller dialing profile does not mean that the profile must be a record. Because there is no evidence of disclaimer or other limitation of the scope of the

claim term "participant profile / user profile", Defendants' proposed construction should be rejected.

**B.  "attribute" ('762 patent claims 1, 2, 21, 25, 26, 30; '330 patent claims 1, 4, 12; '002 patent claims 1, 12; '549 patent claims 1, 11, 12, 17)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| plain and ordinary meaning, i.e., characteristic or feature that is specific to or part of something or someone | Plain and ordinary meaning, i.e., characteristic specific to the respective [user/participant] |

The parties also agree that the term "attribute" should be construed according to its common ordinary plain meaning, the parties differ as to what that meaning is. The Federal Circuit "generally assigns claim terms their ordinary and customary meaning," and Defendants have not met their burden to overcome the ordinary meaning of "attribute." *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1376 (Fed. Cir. 2009). Defendants improperly narrow the term "attribute" by adding the words "specific to the respective [user/participant]." There is nothing about the term "attribute" itself that requires the term to be limited to a respective user/participant. In fact, the term attribute – as used in the claims - is already limited by other words in the claim. For example, claim 1 of the '762 Patent contains the limitation "comprising one or more attributes ***associated with the first participant***." *See* '762 Patent, col. 37 ll. 52-54 (emphasis added). Therefore, that claim already delineates the person or thing to whom the term "attribute" refers. Accordingly, Defendants' proposal would be redundant with words that are already present in the claim itself – and with the term "associated with the first participant" in that example. Defendants cannot justify this narrowing of the word "attribute", where those words are commonly understood to encompass application to anything identified in the claim. Thus, this term should not be improperly narrowed and should be given its plain and ordinary meaning such that the term "attribute" applies to anything thing or person already identified in the respective claim, as proposed by VoIP-Pal.

- 13 -

1

2

### C. "processing the second participant identifier" ('762 patent claim 1; '002 patent claim 1; '549 patent claim 1)

3

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| plain and ordinary meaning, i.e., taking a series of actions or operations with respect to the second participant identifier. | formatting the second participant identifier |

4

5

6

7

"Processing the second participant identifier" should also be given its plain and ordinary

8

meaning. There are "only two exceptions to [the] general rule" that claim terms are construed

9

according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as

10

his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in

11

the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362,

12

1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365

13

(Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed.

14

Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain

15

meaning in two instances: lexicography and disavowal."). No such disavowal or lexicography is

16

present with respect to the term "processing the second participant identifier."

17

Defendants propose an overly restrictive construction that appears to conflate "processing"

18

with "formatting." Indeed, Defendants' proposal is identical to the term to be construed except that

19

20

it substitutes the claimed term "processing" for the word "formatting." Defendants' construction

21

limits "processing" to just formatting. Defendants' proposed construction would rewrite the claim

22

such that it no longer requires any processing other than formatting. Such a construction cannot be

23

proper. *Central Admixture Pharm. Services, Inc. v. Advanced Cardiac Sol'ns, P.C.*, 482 F.3d 1347,

24

1355 (Fed. Cir. 2007) ("[c]laims mean precisely what they say"). There has been no disclaimer here

25

that would support Defendants' proposed construction, that improperly narrows the claims by

26

limiting "processing" to formatting. This is improper and should be rejected.

27

28

Separately, while patents are written for persons of skill in the art, in many cases the ordinary meaning of claim language as understood by such a person may be readily apparent even to lay judges, "and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips,* 415 F.3d at 1314. Here, no construction of "processing" is needed because it is a commonly understood word used in the context of the patent in accordance with their ordinary meaning. *See U.S. Surgical Corp.,* 103 F.3d at 1568 ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.*"); see also O2 Micro Int'l Ltd.,* 521 F.3d at 1362 ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.")

Indeed, Defendants' proposal narrows the scope of these claim terms beyond their plain meanings and exclude embodiments from the specification. For example, "processing" may require some action other than formatting. Yet Defendants' proposal limits "processing" to "formatting." For example, the Patents-in-Suit contemplate that the participant identifier can be processed to produce a new identifier. *See*, *e.g.*, '549 Patent col. 37 ll. 42 – 45 and '762 Patent col. 37 ll. 55 -58. But the claim language is not limited to formatting in order to accomplish that processing. And there has been no such disavowal of everything other than formatting. Defendants seek to limit the claims to embodiments, a construction that is contrary to Federal Circuit guidance. *See*, *e.g.*, *Phillips*, 415 F.3d at 1314-17. When relying on the specification, "it is important to keep in mind that the purpose[] of the specification [is] to teach and enable those of skill in the art to make and use the invention." *Id*. at 1323. Thus, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the

- 15 -

claims to those embodiments." *Id*. That is precisely the error that Defendants are making. Therefore, Defendants' proposed construction should be rejected.

**D. "system" ('762 patent claims 1, 14, 21, 25, 26, 30; '330 patent claims 1, 3, 12, 13; '002 patent claims 1, 12, 22; '549 patent claims 1, 2, 6, 9, 17, 18)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning, e.g., a set of things working together | Indefinite |

Several of the asserted claims recite the term "system." The intrinsic record supports VoIP-Pal's proposal that system should be construed consistent with its common ordinary meaning, e.g., "a set of things working together" and demonstrates that the term "system" is definite. Applicant stated several times in the specification that the term "system" comprises a plurality of nodes with which callers and callees are associated (e.g., '762 Patent at col. 1 ll. 57- 61). And Figure 1 lays out features of the system for making voice over IP telephone/videophone calls that includes "a first supernode shown generally at 11 and a second supernode shown generally at 2 … These supernodes may be in communication with each other by high speed/high data throughput links including optical fiber, satellite and/or cable links, forming a backbone to the system." *See, e.g.,* '762 Patent at col. 13 ll. 20-32. Figure 1 of the '762 Patent is illustrative of the system:

- 16 -



**FIG. 1**

In other words, the system is a number of interrelated components working together to accomplish the claimed invention. The specification's recognition that a "system" is well-defined is confirmed by extrinsic evidence supporting VoIP-Pal's proposed construction. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008) ("A court may look to extrinsic evidence so long as the extrinsic evidence does not contradict the meaning otherwise apparent from the intrinsic record."). For example, contemporaneous dictionaries from around the time of the priority date of the Patents-in-Suit confirm that understanding. *See*, *e.g.*, Malek Decl. Ex. A (Webster's II New College Dictionary (3rd ed. 2005) at p. 1146) (system: "a group of interrelated, interacting, or interdependent constituents forming a complex whole"); *see also*, *e.g.*, Malek Decl. Ex. B (McGraw Hill Dictionary of Scientific and Technical Terms (6th ed. 2002) at

p. 2092) (system: "A combination of several pieces of equipment integrated to perform a specific function").

Accordingly, the specification and extrinsic evidence support VoIP-Pal's proposed construction.

**E. "the classifying the communication is based on the causing the at least one processor to access the at least one database to search for the user profile for the second participant" ('330 patent claim 4)**

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| plain and ordinary meaning, e.g., the step of: "classifying the communication" uses the result of the step of: "causing the at least one processor to access the at least one database to search for the user | Indefinite |

The common ordinary meaning of this claim term dictates a construction that is entirely definite. Indeed, the term merely sets forth how the communications is classified, that is:

- the processor accesses at least one database;

- a user profile for a participant is sought.

While patents are written for persons of skill in the art, in many cases the ordinary meaning of claim language as understood by such a person may be readily apparent even to lay judges, "and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. Here, no construction is needed because the claim terms are commonly understood words used in the context of the patent in accordance with their ordinary meaning. *See U.S. Surgical Corp.*, 103 F.3d at 1568 ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."). Indeed, the claim term uses easily

- 18 -

understood non-technical words such as "classifying", "causing", "processor", "access", "database" and "search". These are not so complicated that a jury would benefit from or need construction. *see also O2 Micro Int'l Ltd.*, 521 F.3d at 1362 ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.").

Accordingly, the claim term should be construed according to its common and ordinary meaning.

## VII.   CONCLUSION

For the foregoing reasons, VoIP-Pal respectfully requests that the Court enter its proposed constructions and reject those proposed by Defendants.

Dated:  July 15, 2019

MALEK MOSS PLLC

/s/ Kevin N. Malek
Kevin N. Malek (*pro hac vice*)
340 Madison Avenue, FL 19
New York, New York 10173
(212) 812-1491
kevin.malek@malekmoss.com

CARLSON & MESSER LLP
David Kaminski
  kaminskid@cmtlaw.com
J. Grace Felipe
  felipeg@cmtlaw.com
5901 W. Century Boulevard
Suite 1200
Los Angeles, California 90045
Tel: (310) 242-2200
Fax: (310) 242-2222

*Attorneys for Plaintiff*

- 19 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing **VOIP-PAL'S OPENING CLAIM CONSTRUCTION BRIEF** has been served on July 15, 2019, to all counsel for Defendant through the Court's CM/ECF system.


<u>/s/ Kevin N. Malek</u>

- 20 -